**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN CRESPO | Crim. Action No. 19-922 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon motions filed by *pro se* Defendant Juan Crespo ("Defendant") (ECF Nos. 315, 319) seeking various forms of post-trial relief. Having considered Defendant's submissions, and for the reasons set forth below, the motions are **DENIED.**

I.      **BACKGROUND**

Defendant was charged in a two-count Superseding Indictment with four other Defendants for Conspiracy to Transport Stolen Property in Interstate Commerce pursuant to 18 U.S.C. § 371 (Count One) and Interstate Transportation of Stolen Property pursuant to 18 U.S.C. §§ 2, 2314 (Count Two). (ECF No. 57.) The Superseding Indictment alleged that the Defendants conspired to steal products from a perfume business in November 2017—later revealed as New Jersey-based Continental Cosmetique ("CC"), (*see* ECF No. 213-2)—and then transported those products to Florida. (ECF No. 57 at 2–3, 6.) On May 27, 2018, Defendants were apprehended when they attempted to break into another perfume warehouse in East Brunswick, New Jersey. (*Id.* at 6.)

On April 6, 2022, after a seven-day trial before the Honorable Peter G. Sheridan, U.S.D.J., a jury found all Defendants guilty on both Counts. (ECF Nos. 144, 153–59.) Judge Sheridan sentenced Defendant Crespo to 37 months imprisonment with three years of supervised release.

(ECF No. 220.) Judge Sheridan also imposed victim restitution of $1,355,000—due jointly and severally from all Defendants—to compensate CC and its insurer, Intact Insurance Company. (*Id.* at 6.) The Third Circuit affirmed the judgment. (ECF No. 296.)

On November 10, 2025, Defendant, appearing *pro se,* filed a motion seeking the Court to: (1) "modify or vacate restitution pursuant to 18 U.S.C. Sections 3664(d)(5) and 3664(k)," (2) "compel production of complete financial and inventory documentation," (3) "terminate supervised release pursuant to 18 U.S.C. Section 3583(e)(1)," and (4) "take notice of a possible *Brady / Giglio* issue involving evidence not presented to the jury during trial."[1] (ECF No. 315 at 1.) Crespo asserts that supposedly "newly discovered evidence"—that should have been presented to the jury at trial—"reflects contradictory internal assessments made by the insurance investigator regarding the amount of loss claimed by the alleged victim" and requires the production of extensive documents from the victim. (*Id.* at 1–2; *see also* ECF Nos. 213 (counsel for co-Defendant raising substantially the same argument about insurance investigator conclusions in January 2023), 213-4 (letter from insurance investigator).) Crespo further argues that the Court should terminate his supervised release because he "has been fully compliant, has no violations, maintains stable residence and employment, and presents no risk to the community." (ECF No. 315 at 1.) Crespo separately moved for the return of his United States Passport from the Department of State under Federal Rule of Criminal Procedure 41(g) given the completion of his incarceration and his compliance with the conditions of his supervised release. (ECF No. 319 at 1–2.)

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

## II.    LEGAL DISCUSSION

### A.  VACATING OR MODIFYING RESTITUTION

18 U.S.C. § 3664(o) outlines potential avenues for vacating or modifying a restitution order:

> A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that—
> (1) such a sentence can subsequently be—
> (A) corrected under Rule 35 of the Federal Rules of Criminal Procedure and section 3742 of chapter 235 of this title;
> (B) appealed and modified under section 3742;
> (C) amended under subsection (d)(5); or
> (D) adjusted under section 3664(k), 3572, or 3613A; or
> (2) the defendant may be resentenced under section 3565 or 3614.

The statutory basis for Crespo's request to vacate or modify the restitution order is unclear. Defendant appears to rely on a mix of Sections 3664(d)(5), (e), (j)(2), and (k), (ECF No. 319 at 1, 4); however, none of these sections provide him the relief he seeks. *See* 18 U.S.C. §§ 3664(d)(5) (prescribing deadlines for determining amount of victim's losses and allowing *victims* to supplement those findings after discovery), (e) (establishing a preponderance-of-the-evidence standard for determining restitution amount and outlining burden of proof in restitution proceedings), (j)(2) (providing for reductions of criminal restitution obligation when compensatory damages are paid *in state or federal civil proceedings*), (k) (allowing court to modify restitution payment schedule following certification from the Attorney General of "material change" in the defendant's economic circumstances).[2]

Notwithstanding dubious statutory standing, Defendant's motion to vacate or modify restitution lacks merit because Defendant, through his attorney, agreed to the restitution amount

---

[2] Nor do the other avenues in 18 U.S.C. § 3664(o) support Defendant's request. *See* Fed. R. Crim. P. 35 (allowing for correction of sentence for clear error within 14 days of sentencing or for rendering substantial assistance within one year of sentencing); 18 U.S.C. § 3742 (delineating method and scope of appellate review of a district court's sentence); 18 U.S.C. § 3572(d)(3) (permitting district court to adjust restitution

that Judge Sheridan imposed. At sentencing, Christopher Amore, Assistant United States Attorney, made the following statement on the record:

> Based on insurance documents that have been received since the conclusion of trial, the parties are in agreement that the loss amount to be applied for sentencing purposes and for restitution purposes is one point – is $1,350,000, which is the exact amount that the insurance company paid to the victim in this case, less a $5,000 deductible.

ECF No. 250 at 11:10–16.

When asked whether he objected to this amount—and Defendant's resulting sentencing guideline range—Defendant's attorney, Pasquale Giannetta, replied, "No objection." (*Id.* at 12:7).[3] Notably, the defense had the benefit of reviewing insurance documents from the Probation Office—including a 2019 insurance settlement letter Defendant now relies on to relitigate his

---

payment schedule upon showing of "material change" in economic circumstances); 18 U.S.C. § 3613A (enumerating consequences district court may impose when defendant defaults on payments); 18 U.S.C. § 3565 (outlining procedure for revoking probation); 18 U.S.C. § 3614 (permitting district court to resentence defendant who knowingly defaults on fine or restitution payments to additional imprisonment).

To the extent Defendant's motion is a motion for reconsideration of Judge Sheridan's determination of the restitution amount (ECF No. 220), such a motion is untimely and otherwise lacks merit. "A motion for reconsideration of an order affecting the final judgment in a criminal case is timely filed if made within the period allotted for the noticing of an appeal; i.e., within [14] days." *United States v. Benanti*, 137 F. App'x 479, 481 (3d Cir. 2005) (per curiam); 18 U.S.C. § 3664(o) (classifying restitution order as final judgment); Fed. R. App. P. 4(b)(1)(A) (setting the period allotted for appeal at 14 days). Defendant's motion was filed nearly three years after final judgment. (*See* ECF Nos. 220, 315.)

[3] Because this was a multi-defendant case, Judge Sheridan stated on the record at sentencing that "certain statements . . . would be made in the first sentencing [that] would be carried over to all the other sentencings," including "the statement of facts." (ECF No. 250 at 3:19-23.) As such, though counsel's agreement was during a co-Defendant's sentencing, it applied equally to Defendant's sentence. At Defendant's own sentencing, his attorney recounted prior disputes regarding the loss amount, which the Government had previously contended was $2.2 million. (ECF No. 251 at 6:21–8:17.) Pertinently, however, Defendant's counsel acknowledged that "[n]ow we know what the true loss amount is; we know that it's under the 1.5." (*Id.* at 8:16-17.) Though the parties disputed the loss amount *prior to sentencing*, counsel's statements *at sentencing* comport with his above stipulation to the accurate loss amount of $1,350,000.

restitution—prior to his agreement. (*See* ECF No. 213-2 (Probation Office providing insurance claim information in November 2022).)

"The Third Circuit enforces such stipulations" to the amount that a criminal defendant must pay in restitution; post-sentencing attacks as to the restitution amount are unavailing. *United States v. Tejada*, No. 24-00165, 2025 WL 3499038, at *3 (E.D. Pa. Dec. 5, 2025) (citing *United States v. Cepero*, 224 F.3d 256, 264–65 (3d Cir. 2000)). Accordingly, Defendant's request to vacate or modify restitution is denied.

## B.  POST-CONVICTION DISCOVERY AND *BRADY & GIGLIO* VIOLATIONS

"There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). "As the United States Supreme Court has observed, 'nothing in our precedents suggested that [the *Brady*] disclosure obligation continued after the defendant was convicted and the case was closed.'" *United States v. Anand*, No. 19-518-1, 2026 WL 1161439, at *2 (E.D. Pa. Apr. 29, 2026) (quoting *Dist. Att'y's Off. for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009)) (alteration in original); *see also Twillie v. Foulk*, 360 F. App'x 301, 304 (3d Cir. 2010) (per curiam) (applying *Osborne* to determine that *Brady*'s "require[ment of] disclosure of material exculpatory evidence to a defendant before trial" is inapplicable in post-conviction context).

As a result, Defendant is not entitled to post-conviction discovery. Defendant's discovery request otherwise lacks merit because he essentially seeks to relitigate a restitution obligation that he stipulated to at sentencing. Therefore, Crespo's motion for post-conviction discovery is denied.

Defendant further asserts that the Government violated *Brady* and *Giglio* by failing to disclose information necessary to Judge Sheridan's restitution determination. A due process violation under *Brady* "occurs if: (1) the evidence at issue is favorable to the accused, because

either it is exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn*, 642 F.3d 126, 433 (3d Cir. 2011) (citations omitted). Materiality requires "a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different." *Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009) (citing *Giglio v. United States* 405 U.S. 150, 152 (1972)). "'[T]he materiality standard for *Brady* claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *United States v. Johnson*, 628 F. App'x 124, 129 (3d Cir. 2015) (quoting *Banks v. Dretke*, 540 U.S. 668, 698 (2004)).

Even if Defendant's "recently discovered" exhibits related to insurance claims *were* new—which is belied by the record, (ECF No. 213)—no *Brady* violation occurred in this case because the government did not withhold any evidence in its possession from the defense to begin with. "Where the prosecutor had no actual or constructive possession of information, there can be no *Brady* violation for failure to disclose it." *Hollman v. Wilson*, 158 F.3d 177, 180 (3d Cir. 1998). On December 9, 2022, prior to sentencing, Judge Sheridan issued a subpoena to Atlantic Specialty Insurance Company—the issuer of the insurance settlement letter at issue—at the Government's request and with the victim's consent. (ECF No. 212.) That the Government requested the subpoena after trial indicates that it did not previously possess the supposedly exculpatory discovery.

Even assuming, *arguendo*, that the Government withheld information from the defense regarding the loss amount, the information was not "material" under *Brady*. On appeal, the Third Circuit determined that Judge Sheridan did not err in limiting cross-examination related to the loss amount at trial—precisely the time these insurance materials could have been used—because

"[t]he Government only had to prove a loss of more than $5,000 under 18 U.S.C. § 2314, and Appellants did not dispute that the loss exceeded that amount." (ECF No. 310-2 at 4.) In short, this discovery, which moved Defendant's restitution obligations from over $2.2 million to under $1.5 million at sentencing, would not have changed this "more than $5,000" finding. Accordingly, Crespo's *Brady/Giglio* motion is denied.

## C. EARLY TERMINATION OF SUPERVISED RELEASE

A district court may terminate a term of supervised release any time after the expiration of one year of supervised release, if the court is "satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice." 18 U.S.C. § 3583(e)(1). The court must consider the following factors under 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide [the defendant] with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (citing 18 U.S.C. § 3553(a)(1), (2)(B)–(D), (4)–(7)).

"A district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.* (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)). District courts "are not required to make specific findings of fact with respect to each of these factors; rather, a statement that the district court has considered the statutory factors is sufficient." *Id.* at 52–53 (cleaned up).

The Section 3553(a) factors collectively weigh against granting Defendant's motion for early termination. As Judge Sheridan explained on the record at sentencing, the nature and circumstances of the offense were "serious," "heinous," and "require[d] punishment." (ECF No. 251 at 14:19–22). Crespo's criminal history and his previous failure to comply with conditions of federal supervised release also indicate a need to protect the public and prevent recidivism. In 2005, Defendant was convicted in the Southern District of Florida of transportation of stolen goods—which involved use of a firearm—and received a sentence of 45 months imprisonment and three years of supervised release. (*Id.* at 12:18–13:5.) Notably, Defendant's 2005 conviction was for the same offense as one of his convictions in the instant case. (*Id.*) Defendant also violated his term of supervised release for his 2005 conviction and was consequently sentenced to an additional term of 24 months imprisonment. (*Id.* at 13:13–15.)

Defendant's only argument in support of termination is that he has remained compliant with the requirements of supervised release. This is plainly insufficient to mandate termination. *See, e.g., United States v. Foti*, No. 20-851, 2026 WL 949003, at *2 (D.N.J. Apr. 8, 2026) ("[M]ere compliance with the conditions of supervised release is generally insufficient to support early termination." (quotation omitted)). Accordingly, the Court denies Defendant's motion for early termination of supervised release.

## D. RETURN OF U.S. PASSPORT

Defendant's request under Federal Rule of Criminal Procedure 41(g) for the return of his passport is also denied. As an initial matter, Rule 41(g) requires a movant seeking the return of property to be "aggrieved by an unlawful search and seizure or by the deprivation" of that property. Fed. R. Crim. P. 41(g). Defendant cannot maintain his motion because a U.S. passport is not the property of the passport holder. "A Passport at all times remains the property of the United States

8

and must be returned to the U.S. Government upon demand." *United States v. Banks*, 372 F. App'x 237, 241–42 (3d Cir. 2010) (quoting 22 C.F.R. § 51.7(a)). In *Banks,* the Third Circuit held that the District Court correctly denied Defendant's Rule 41(g) motion for return of his passport after it was allegedly seized by the Government during its investigation and was thereafter transferred to the Department of State. *Id.* Accordingly, Crespo's motion for return of his passport is denied because he cannot demonstrate any entitlement to its return under Rule 41(g).

## CONCLUSION

For the foregoing reasons, Defendant's various motions are **DENIED.** An appropriate Order follows.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: July 2, 2026