**U.S. Department of Justice**

*United States Attorney's Office*
*District of New Jersey*

*Michael A. Hardin*
*Assistant United States Attorney*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*
*Direct Dial: 973-645-2798*

September 12, 2026

**VIA ECF & E-Mail**

The Honorable Robert Kirsch
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re: *United States v. Juan Crespo*, Crim. No. 19-922 (RK)

Dear Judge Kirsch:

The Government submits this letter in lieu of a more formal submission in opposition to Defendant Juan Crespo's ("Crespo") motion for early termination of supervised release. *See* ECF No. 329 (the "Motion"). Crespo has failed to show such relief is warranted by his conduct or that it is in the interest of justice.

**Background**

This case arises from Crespo's participation in a conspiracy to burglarize two perfume distributors' warehouses in New Jersey and then use tractor trailer trucks to transport the stolen perfume to Florida and sell it. PSR ¶ 20.

On the evening of November 5, 2017, Crespo and three others entered a warehouse in Edison, New Jersey. PSR ¶¶ 21, 25. Crespo called another co-conspirator (the "driver") and directed him to drive a Freightliner truck to the warehouse. *Id.* ¶ 26. The driver positioned two trailers at the warehouse's loading dock so that Crespo and the others could load both trailers with stolen perfume. *Id.*

Over the next few days, the driver returned twice to the Edison warehouse, retrieved each trailer, and drove both to Florida. PSR ¶¶ 27-28. However, the driver hid the second trailer from the other members of the conspiracy because he had not yet been paid the $70,000 he was promised for his participation. *Id.* ¶ 29.

The driver then falsely claimed to his co-conspirators that someone stole the truck and second trailer from him. PSR ¶ 30. On November 13, 2017, Crespo and another co-conspirator confronted the driver and accused him of lying, and the other co-conspirator chased the driver around a parking lot with a machete. *Id.* On November 14, other co-conspirators brought the driver to a ranch. *Id.* ¶ 32. With Crespo present, various co-conspirators tied the driver to a chair and beat him; brandished a garden trimmer, threatening to cut off the driver's fingers; and when the driver still refused to tell them the location of the truck and second trailer, they poured gasoline on him and threatened to burn him alive. *Id.* ¶ 33. Crespo himself brandished a gun and threatened to shoot the driver if he kept quiet. *Id.* When the driver finally revealed the truck and trailer's location, Crespo and two others blindfolded the driver, drove him to a Wendy's restaurant, and let him go. *Id.*

On May 27, 2018, Crespo and four other co-conspirators attempted to burglarize another perfume distributor's warehouse in East Brunswick, New Jersey, but accidentally triggered the warehouse's security alarm, and the business owner called the police. PSR ¶ 34. Police arrived and observed an SUV attempting to leave the warehouse parking lot. *Id.* ¶ 35. When the police activated their emergency lights, the SUV's occupants ducked and concealed themselves, and when officers approached the SUV on foot, the SUV began to back away, then stopped. *Id.* Police arrested everyone, and recovered a prybar, cable drill, hammer, screwdriver, head lights, gloves, ski masks, and a stolen license plate from inside the SUV. *Id.*

Crespo's criminal history prior to this case involves several other burglaries and possession of stolen property, and at least five violations of supervised release:

- On July 22, 2001, Crespo was arrested with two others in Denton, Texas after he attempted to burglarize a company's building. Crespo and his co-defendants cut phone lines and broke a lock on the fence. Crespo and the others evaded police capture in a van before they were eventually arrested. PSR ¶ 81.
    - Crespo was convicted in Denton County Criminal Court of burglary of a building and evading arrest. On July 30, 2002, Crespo was sentenced to 58 days' imprisonment and a fine, then was rearrested on September 12, 2002, and sentenced to an additional 48 days' imprisonment. *Id.*
- On August 9, 2005, Crespo and others were arrested after they stole approximately $10.3 million in merchandise from a commercial warehouse in Miami, Florida, including $10 million in Armani clothing. Crespo and the others attempted unsuccessfully to flee the police. Crespo brought a gun to the warehouse, which he had purchased and owned. PSR ¶ 82.
    - Crespo was convicted in the United States District Court for the Southern District of Florida of possession of stolen property shipped in interstate commerce, in violation of 18 U.S.C. § 2315. *United States v. Crespo*, Crim. No. 05-20625, Dkt. No. 195 at 1 (S.D. Fl. Dec. 27, 2005) ("S.D. Fl. Dkt."). On December 22, 2005, the Court sentenced him to 57

months' imprisonment, followed by three years' supervised release, and a $10,000 fine. *Id.* at 2-3, 5. The Court imposed $1,506,967 in restitution jointly and severally on Crespo and his co-defendants. S.D. Fl. Dkt. No. 217 at 5. On June 12, 2007, the Court amended Crespo's prison sentence to 45 months. PSR ¶ 82; S.D. Fl. Dkt. No. 259 at 1.

 - Crespo's 2009 arrest and conviction in Florida, discussed below, also violated his federal supervised release. On October 6, 2009, the District Court found Crespo guilty of failing to refrain from violation of Florida law by committing loitering and prowling, and possession of burglary tools. S.D. Fl. Dkt. No. 259 at 1-2. The Court revoked Crespo's supervised release and sentenced him to 24 months' imprisonment, followed by 12 months' additional supervised release. *Id.* at 2.

 - Thereafter, Crespo committed three other violations of supervised release: (1) he failed to notify Probation of a change of employment; (2) he lied about his monthly income; and (3) he lied to Probation about remaining employed with his former employer. S.D. Fl. Dkt. No. 288 at 2. On January 19, 2012, with Crespo's consent, the Court modified the terms of Crespo's supervision to require him to live at a residential reentry center until his term expired on June 9, 2012. *Id.*

- On April 24, 2009, Crespo was arrested in Broward County, Florida. He was convicted of loitering or prowling, and on June 2, 2009, the Court sentenced him to six months' probation and a fine. PSR ¶ 83.

On December 18, 2019, a Grand Jury indicted Crespo and two others with conspiracy to transport stolen property in interstate commerce, in violation of 18 U.S.C. § 371 (Count One), and interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2 (Count Two). ECF No. 43. The Grand Jury returned a Superseding Indictment on June 18, 2020, bringing the same two counts against Crespo and four other defendants. ECF No. 57.

On April 7, 2022, a jury convicted Crespo and the other four defendants of both counts in the Superseding Indictment. ECF No. 144.

Prior to sentencing, Probation calculated Crespo's Total Offense Level to be 22, based on a Base Offense Level of six and a 16-level enhancement because Probation calculated the loss amount to be $2,253,549.85. PSR ¶¶ 70, 71, 78. However, based on new information, the parties agreed on a loss amount of $1,355,000, and the Court accepted this loss amount at sentencing. *See* ECF No. 229 at 4; ECF No. 325 at 4. This lowered the loss amount enhancement to 14 levels, yielding a new Total Offense Level of 20. *See* U.S.S.G. § 2B1.1(b)(1)(H). With a Criminal History Category of II, PSR ¶ 86, Crespo's Guidelines range was between 37 and 46 months' imprisonment. U.S.S.G. Ch. 5 Pt. A.

On January 10, 2023, the Court sentenced Crespo to 37 months' imprisonment on each of Counts One and Two, followed by three years' supervised release, each to be served concurrently. ECF Nos. 215, 220. The Court also ordered Crespo to pay $1,355,000 in restitution. ECF No. 220 at 7.

Crespo's supervised release term began on March 21, 2025, and is scheduled to end on March 20, 2028. On August 10, 2026, approximately 17 months into his 36-month term, Crespo filed this Motion *pro se*.

This is Crespo's second motion for early termination of supervised release. In Crespo's first motion, dated November 10, 2025, he argued early termination was warranted because he had fully complied, maintained stable residence and employment, and presented no risk to the community. ECF No. 315 at 1. On July 2, 2026, the Court denied Crespo's first motion. ECF No. 325 at 7-8. In doing so, the Court cited the "heinous" nature of the underlying offense, as well as "Crespo's criminal history and his previous failure to comply with conditions of federal supervised release." *Id.* at 8. The Court found that Crespo's "only argument in support of termination"—his compliance with the terms of supervised release—was "plainly insufficient to mandate termination." *Id.* (citing *United States v. Foti*, No. 20-851, 2026 WL 949003, at *2 (D.N.J. Apr. 9, 2026)).

Crespo's new Motion is similar to his first. Crespo contends that he "has fully complied with every condition of supervised release," has "successfully completed the Residential Reentry Center program on March 21, 2025," and has "maintained continuous lawful full-time employment . . . since July 2024." Motion at 2. Crespo argues his record on supervised release "demonstrat[es] sustained rehabilitation, lawful conduct, stable employment, and successful reintegration into the community," and as such, "continued supervision is no longer necessary." *Id.* at 4.

**Argument**

The Court should deny Crespo's Motion because he still has not shown that early termination is justified.

Under 18 U.S.C. § 3583(e), this Court may terminate a term of supervised release prior to its expiration under only select circumstances:

> The court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)[,] terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1).

It is Crespo's burden, "as the party receiving the benefit of early termination, to demonstrate that such a course of action is justified." *United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006). After all, it "logically follows that the burden of ultimate persuasion should rest upon the party attempting to adjust the sentence." *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir. 1989). In assessing whether Crespo has met that burden, this Court must consider:

(1) the nature and circumstances of the offense and the defendant's history and characteristics, 18 U.S.C. § 3553(a)(1);

(2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide [defendant] with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

(3) the kinds of sentence and sentencing range established for the defendant's crimes, § 3553(a)(4)(A);

(4) pertinent policy statements issued by the United States Sentencing Commission, § 3553(a)(5);

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

(6) the need to provide restitution to any victims of the offense, § 3553(a)(7).

"After considering these factors, the court may provide relief only if it is satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice." *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (citing 18 U.S.C. § 3583(e)(1)). "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.* (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014). Furthermore, "[d]istrict courts are not required to make specific findings of fact with respect to each of these" specified § 3553(a) "factors; rather, a statement that the district court has considered the statutory factors is sufficient." *Id.* at 52-53 (internal quotation omitted).

Repudiating contrary language in earlier, non-precedential opinions, however, *Melvin* held that "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Melvin*, 978 F.3d at 53. Although "extraordinary circumstances may be *sufficient* to justify early termination of a term of supervised release," they are not "*necessary* for such

termination." *Id.* Nonetheless, "*generally*, early termination of supervised release under § 3583(e)(1) will be proper" as a discretionary matter "only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it." *Melvin*, 978 F.3d at 53 (quotation marks omitted). "That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced," as § 3553(a) requires, a reviewing court "would expect that something will have changed in the interim that would justify an earlier end to a term of supervised release." *Id.*

Taking into consideration the Section 3553(a) factors and the interest of justice, early termination of supervised release is not warranted here. As the Third Circuit explained in *Melvin*, early termination of supervised release is *generally* proper only where new or unforeseen circumstances warrant it. That is because "if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release." *Id.* Here, Crespo has not identified any changed circumstances warranting departure from the Court's initial determination that the three-year term was a "sufficient, but not greater than necessary" period of supervised release. Nor has he identified any changed circumstances since his November 2025 motion, which this Court denied only a couple of months ago. *See* ECF Nos. 315, 325.

Early termination is also inappropriate because the same § 3553(a) factors supporting Crespo's original sentence of supervised release still support it today.

The nature and circumstances of this offense favor requiring Crespo to serve the full three-year term of supervised release. *See* 18 U.S.C. § 3553(a)(1); *accord* ECF No. 325 at 8 (this Court finding the "nature and circumstances of the offense" weighed against early termination). Crespo contributed significantly to an interstate conspiracy to burglarize perfume distributors' warehouses, steal over $1.3 million in perfume, and transport the stolen goods from New Jersey to Florida to sell it. PSR ¶ 20-21, 24-26. He was among the co-conspirators who broke into both warehouses, and during the first burglary, he directed the driver to come to the loading dock with the truck and prepare the trailers to be loaded with the stolen perfume. *Id.* ¶¶ 24-26, 34-35. Had Crespo and his co-conspirators not been caught during the second burglary, the total loss amount may have been even higher. *See id.* ¶¶ 34-35.

Crespo also acted as an enforcer on behalf of the conspiracy when its members suspected the driver had hidden the second trailer. Crespo was among the first to confront the driver while his co-conspirator chased the driver with a machete. PSR ¶ 32. Later, when the driver was tied to a chair and being tortured and threatened, Crespo brandished a gun—one he had lost the right to possess by committing prior felonies—and threatened to shoot the driver if he did not tell them where the trailer was. *Id.* ¶¶ 32, 33. Crespo also helped blindfold the driver and release him after the conspirators finally succeeded in making the driver talk. *Id.* ¶ 33. Crespo's extensive

and violent participation in this conspiracy show he has a lot to prove before he can be trusted fully to reenter society absent supervision.

Crespo's criminal history also weighs heavily against early termination. *See* 18 U.S.C. § 3553(a)(1). Over the past 25 years, Crespo has shown a pattern of conspiring with others to commit commercial burglaries and steal valuable goods: his 2002 conviction was for breaking into a commercial building in Texas, going so far as to cut phone lines and break locks, PSR ¶ 81; his 2005 conviction was for stealing over $10 million in merchandise from a warehouse, *id.* ¶ 82; and even his 2009 conduct involved possessing burglary tools, *see* S.D. Fl. Dkt. No. 259 at 2. Moreover, just as Crespo and the other SUV occupants in this case initially tried to escape the police at the second warehouse, the 2002 and 2005 convictions each involved escape attempts from law enforcement, and his 2002 convictions included one count of evading arrest. *See* PSR ¶¶ 35, 81, 82. Crespo should finish his full three-year term of supervision to prove he is finally dedicated to discontinuing this criminal pattern.

Crespo's history also shows a troubling disregard for the rules of supervision. Having been released after 58 days' imprisonment for his first burglary conviction, Crespo was promptly rearrested and sentenced to an additional 48 days' imprisonment. PSR ¶ 81. He later violated federal supervised release from his 2005 conviction *five times*. The first two violations were for committing state crimes, and were serious enough to warrant a sentence of 24 months' imprisonment. S.D. Fl. Dkt. No. 259 at 1-2. The last three violations were for lying to Probation about his employment status and income, which led to Crespo's placement at a residential reentry center for nearly five months to finish his term of supervision—essentially, a recognition that supervision had failed. S.D. Fl. Dkt. No. 288 at 2. Because Crespo repeatedly failed during his first period of supervised release, he should have to prove he is trustworthy by finishing this term successfully.

For similar reasons, supervision remains warranted to deter Crespo from future crimes, and to protect the public. *See* 18 U.S.C. §§ 3553(a)(2)(B) & (C); *accord* ECF No. 325 at 8 ("Crespo's criminal history and his previous failure to comply with conditions of federal supervised release also indicate a need to protect the public and prevent recidivism."). Continued supervision makes it harder for Crespo to commit new crimes, and will give Probation an easy mechanism to intervene if Crespo begins to lapse back into his old ways. If Crespo is deterred from future crimes, the public will be protected from those crimes. Protecting the public is particularly important here because of Crespo's history of arming himself during his criminal activity, *see* PSR ¶ 82, and his willingness to use a gun to threaten someone's life, *see id.* ¶ 33.

Denying Crespo's motion also avoids unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). Each of Crespo's co-defendants in this case was sentenced to three years' supervised release. *See* ECF Nos. 219, 221, 222, 223. None has yet

successfully moved for early termination.[1] Crespo should serve three years like everyone else.

Finally, continuing supervision will help provide restitution to Crespo's victims. *See* 18 U.S.C. § 3553(a)(7). Crespo is responsible for $1,355,000.00 in restitution in this case. ECF No. 197. Crespo also remains responsible for over $1.5 million in restitution from his 2005 case. S.D. Fl. Dkt. No. 217 at 5. And Crespo's history of lying to Probation about his income and employment raise the concern that he may try to shirk income-based restitution obligations. *See* S.D. Fl. Dkt. No. 288 at 2. Keeping Crespo on supervision will incentivize continued compliance and give Probation an enforcement mechanism—a violation petition—if he falters.

Crespo's sole argument is that his compliance with supervised release supports his early termination. Motion at 2. It does not. As the Court pointed out in denying Crespo's first motion, Crespo's compliance alone is "plainly insufficient to mandate termination[,]" because compliance is expected. ECF No. 325 at 8; *see, e.g., United States v. Stiso*, No. 2:14-CR-484 (WJM), 2021 WL 1291648, at *3 (D.N.J. Apr. 6, 2021) (defendant's "compliance with the conditions of his supervision . . . is precisely what is expected of him"); *United States v. Foti*, No. 20-851, 2026 WL 949003, at *2 (D.N.J. Apr. 9, 2026)); *United States v. Dziesiuta*, No. CR 20-339 (MAS), 2022 WL 876758, at *3 (D.N.J. Mar. 24, 2022); *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003); *United States v. Paterno*, No. 99-CR-037 (WGB), 2002 WL 1065682, at *2 (D.N.J. Apr. 30, 2002). Far from being a "new or unforeseen circumstance" as contemplated by *Melvin*, 978 F.3d at 53, Crespo's compliance with his supervised release is exactly what is expected of him.

---

[1] Co-defendant Felix Castillo moved for early termination of supervised release on July 22, 2026, ECF No. 327, which the Government has opposed on jurisdictional grounds because this Court already transferred jurisdiction over Castillo's supervision to the United States District Court for the Southern District of Florida. *See* ECF No. 331. Castillo's motion remains pending. Even if Castillo's supervised release were terminated early, the two defendants are not similarly situated. Castillo, unlike Crespo, received zero criminal history points at sentencing, ECF No. 285 at 1, and lacks Crespo's criminal history and repeated violations of supervision, so it would not create an unwarranted sentencing disparity to deny Crespo's motion.

## **Conclusion**

Early termination of Crespo's supervision is not "warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Thus, the Government respectfully requests that the Court deny the Motion.

Respectfully submitted,

ROBERT FRAZER
United States Attorney

By: *_/s/ Michael A. Hardin_*
Michael A. Hardin
Assistant United States Attorney

cc: Eric Rocha, U.S. Probation Officer (via e-mail)
Juan Crespo, *pro se* Defendant (via First Class Mail)
14526 NW 88th Avenue, Miami Lakes, FL 33018